**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VERNON E. CEPHAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) |
| v. | )  C.A. No. 23-491-CFC-LDH |
| ROBERT MAY, Warden, | ) |
| and the ATTORNEY GENERAL of | ) |
| the STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

FILED

SEP 1 7 2025

U.S. DISTRICT COURT DISTRICT OF DELAWARE

**REPORT AND RECOMMENDATION**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Petition") filed by petitioner Vernon E. Cephas ("Petitioner"). (D.I. 3). The State filed an Answer in opposition and Petitioner filed a reply. (D.I. 17; D.I. 27). As set forth below, I recommend that the Petition be denied.

## I.    LEGAL STANDARD

### A.   Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, the AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844–45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted, and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1996). If a petitioner presents unexhausted

2

habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750–51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260–64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750–51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that "the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," (*id.* at 496) then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage

3

of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339–40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard set forth in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## II.    BACKGROUND

### A. Factual History[1]

In 2015, [] Vernon Cephas was arrested for having allegedly committed sexual offenses against his girlfriend's seven-year[-]old niece, Theresa.

. . . [N]ear the end of February 2015, Theresa told her mother that Cephas had been molesting her. Theresa's mother reported the alleged abuse to the child's pediatrician on March 3, 2015. After talking to Theresa and conducting a physical examination, the pediatrician referred Theresa and her mother to the hospital, where Theresa was seen by a sexual assault nurse examiner. On the 11th of the same month, Theresa was interviewed by a forensic interviewer at the Child Advocacy Center. After the interview, Detective Mark Csapo of the Delaware State Police applied for, and was granted, a warrant for Cephas' arrest.

[] Later that day, the police arrested Cephas at his home. After knocking on the door and receiving no response, the police were approached by a juvenile male who allowed them into the home after telling the police that he lived there[,] and that Cephas was inside. When entering the residence, the police announced their presence

---

[1]    The Delaware Supreme Court used a pseudonym to protect the identity of the complaining witness. *See* Del. Supr. Ct. R. 7(d).

5

> several times but received no response. The police found Cephas standing in a bedroom closet that was partially closed.
>
> [] After Cephas was placed under arrest, he was taken to State Police Troop 3 where he was given Miranda warnings by Detective Csapo. After the warnings were given, Cephas indicated that he wanted to answer the Detective's questions. During the interrogation that followed, Cephas denied some of the accusations, but admitted others.

*Cephas v. State*, 169 A.3d 352 (Table), 2017 WL 3048466, at *1–2 (Del. July 18, 2017).

### B. Procedural History

Petitioner was arrested by Wilmington Police on March 11, 2015. (D.I. 16-1 at 1; Entry No. 1). On May 4, 2015, a Kent County grand jury indicted Petitioner on charges of four counts of first-degree rape, three counts of second-degree rape, sexual solicitation of a child, and continuous sexual abuse of a child. (D.I. 16-4 at 11–14). Petitioner moved to suppress the statements he gave to law enforcement following his arrest on March 11, 2015. (D.I. 16-1 at 1; Entry No. 3). The Superior Court held an evidentiary hearing following the State's response in opposition to Petitioner's motion on August 4, 2016, and denied the motion following the hearing on August 16, 2016. (D.I. 16-1 at 4; Entry Nos. 29–31; D.I. 16-4 at A145–49). A four-day jury trial began on September 7, 2016; the jury found Petitioner not guilty of the four counts of first-degree rape but found him guilty of four counts of first-degree unlawful sexual contact and all other counts as charged. (D.I. 16-34 at 64–67; D.I. 16-1 at 6; Entry No. 43). On December 13, 2016, the trial judge sentenced Petitioner to a total of 157 years of imprisonment, suspended after 79 years, 75 of which were imposed as a mandatory-minimum sentence. (*See* D.I. 16-4 at A541–43; D.I. 16-35 at 11–13).

Petitioner appealed the decision and after filing a non-merit brief his attorney filed a motion to withdraw after finding no meritorious claims for appeal. (*See generally* D.I. 16-2; D.I. 16-5).

Petitioner himself provided additional points to be considered by the Delaware Supreme Court. (D.I. 16-3). The Delaware Supreme Court declined to consider the claims of ineffective assistance of counsel on direct appeal and reviewed the rest of his claims on the merits under a plain error standard. *See Cephas v. State*, 2017 WL 3048466, at *2–4. In its analysis, the court found no nonfrivolous issues raised by Petitioner and affirmed his conviction. *Id.* at *4. On August 28, 2017, Petitioner filed a *pro se* motion for post-conviction relief and for the appointment of counsel. (D.I. 16-1 at 8; Entry No. 59). Petitioner was appointed counsel on March 15, 2018, and an amended motion for post-conviction relief was filed on November 7, 2018. (D.I. 16-1 at 10; Entry Nos. 74, 79). Superior Court Commissioner Andrea Freud issued a Report recommending that the Petitioner's post-conviction relief be denied as procedurally barred by Rule 61(I)(3) for failure to prove cause and prejudice. (D.I. 16-14 at A971– 92; D.I. 16-1 at 15; Entry No 109). On July 16, 2021, the Superior Court denied Petitioner's motion for post-conviction relief; Petitioner appealed. *See State v. Cephas*, 2021 WL 3141194, at *1–2 (Del. Super. Ct. Jul. 26, 2021); (D.I. 16-1 at 16; Entry No. 118).[2]

On appeal, Petitioner's counsel filed a no-merits brief and motion to withdraw, asserting that, after a review of the record, he had concluded there were no arguable issues for appellate review. (*See* D.I. 16-10 at 31; D.I. 16-16). As part of his motion to withdraw, Petitioner's counsel also provided him with a statement informing Petitioner of the motion to withdraw, the no-merits brief, and that Petitioner could state additional points he wanted the court to consider. (*See* D.I. 16-15). Petitioner raised several points (D.I. 16-11) for the court to consider, which the Delaware

---

[2]    Due to an administrative error by the court, Petitioner's counsel did not receive a copy of the order on July 26, 2021. Upon noticing this error, the court issued an order correcting the issuance date of the original order denying Petitioner's appeal to September 8, 2021, to preserve Petitioner's right to appeal the decision. (*See* D.I. 16-1 at 17; Entry Nos. 121, 122).

Supreme Court considered and rejected on the merits. *See Cephas v. State*, 2022 WL 1552149, at *2–5 (Del. May 17, 2022). On December 6, 2021, prior to the issuance of the opinion denying Petitioner's first appeal, he filed a *pro se* second "amended" motion[3] for post-conviction relief, and the Superior Court stayed the matter until the Delaware Supreme Court decided the appeal. (D.I. 16-1 at 17–18; Entry Nos. 126, 127). On July 21, 2022, Petitioner filed a "second" motion[4] for post-conviction relief. (D.I. 16-1 at 19; Entry No. 131).

On August 4, 2022, the Superior Court, having considering Petitioner's second and third motions for post-conviction relief, summarily dismissed the claims as procedurally barred under Delaware Superior Court Criminal Rule 61(d)(2).[5] (D.I. 16-1 at 18; Entry No. 133). Petitioner appealed and on December 2, 2022, the Delaware Supreme Court affirmed. *Cephas v. State*, 2022 WL 17410096, at *1. Petitioner filed his fourth motion for postconviction relief *pro se* on February 22, 2023. (D.I. 16-1 at 19; Entry No. 138). On February 23, 2023, the Superior Court summarily dismissed the motion because Petitioner had failed to identify exceptions to the Superior Court Criminal Rule 61(i)(1) and (2). (D.I. 16-24; D.I. 16-1 at 19; Entry No. 139). On May 22, 2023, the Delaware Supreme Court affirmed the judgment of the Superior Court, finding that Petitioner

---

[3]     Petitioner titled his motion "amended," but it appeared to be a new motion for post-conviction relief, and the second motion on this issue. His first motion was filed on November 7, 2018. (*See* D.I. 16-1 at 10; Entry No. 74).

[4]     Because his "amended" motion was the true second motion for post-conviction relief, this motion is, therefore, the third motion for post-conviction relief Petitioner had filed, making both successive filings.

[5]     *See Cephas v. State*, 2022 WL 17410096, at *1 (Del. Dec. 2, 2022) ("Rule 61 (i)(5) allows a defendant to avoid application of the procedural bars if . . . he pleads with particularity under Rule 61(d)(2) that: (1) new evidence exists that creates a strong inference that the defendant is actually innocent in fact of the crime, or (2) the United States or this Court has announced a new rule of constitutional law retroactive to cases on collateral review that renders the conviction or death sentence invalid" (citing Del. Super. Ct. Crim. R. 61(i)(5), (d)(2)).

had failed to overcome the procedural bars. (D.I. 16-27). After exhausting his state court post-conviction remedies, Petitioner filed his petition for a writ of habeas corpus, and a subsequent addendum, in the District of Delaware on May 4, 2023. (D.I. 1, 8).

## III. DISCUSSION

In his timely-filed Petition for federal habeas relief, Petitioner asserts several claims for relief that fall into 3 categories: (1) counsel, at trial and in post-conviction proceedings, provided five instances of ineffective assistance (as defined below, Grounds 1–3, 5, and 7 of Petitioner's Addendum to Habeas Corpus Petition, D.I. 8); (2) the judge presiding over his criminal trial was biased (as defined below, Ground 4); and (3) the cumulative effect of the other errors present throughout the trial deprived him of his due process rights (as defined below, Ground 6).[6]

### A. Grounds 1–3, 5, and 7: Ineffective Assistance of Trial and Post-Conviction Counsel

Petitioner contends that trial and appellate counsel provided ineffective assistance in five distinct ways: (1) trial counsel failed to file a motion to suppress a statement obtained in violation of the 4th and 5th amendments (D.I. 8 at 3) ("Ground 1"); (2) trial counsel to communicate a plea offer (D.I. 8 at 20–21) ("Ground 2"); (3) trial counsel failed to object to testimony from State witnesses (D.I. 8 at 33) ("Ground 3"); (4) failing to request a curative instruction or move for mistrial when the prosecutor committed misconduct during opening and closing arguments (D.I. 8 at 42–43) ("Ground 5"); and (5) the presence of a conflict of interest (D.I. 8 at 59) ("Ground 7").

Habeas relief is only available if the Superior Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law. *See Wilson v. Sellers*, 138

---

[6]    Petitioner's claims are set forth in various papers but the separate claims are most clearly enumerated in his Addendum to Habeas Corpus Petition (D.I. 8). In that filing, he refers to his various claims for relief as "Ground 1" and so on; rather than re-categorize his claims, the Court follows his naming convention herein.

S. Ct. 1188, 1193–94 (2018) (holding that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment). The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003).

Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate there is a reasonable probability that, but for counsel's error, the result would have been different." *Id.* at 687–96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. To sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259–60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891–92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

### i.    Ineffective Assistance: Ground 1

In Ground 1, Petitioner argues that he was provided ineffective assistance of counsel for two reasons: (1) trial counsel should have moved to suppress Petitioner's statement to police for lack of a valid warrant (D.I. 8 at 3–11), and (2) trial counsel failed to argue that Petitioner invoked

his right to remain silent during police interrogation. (*Id.* at 12–19). Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard as governing Petitioner's ineffective assistance of counsel contentions. *Cephas*, 2022 WL 1552149, at *2 n. 11. As a result, the Superior Court's decision was not contrary to clearly established federal law.

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of the Petitioner's case. *See Harrington*, 562 U.S. at 105–06. When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when reviewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. Arrest Warrant

I first turn to Petitioner's contention that there were discrepancies between the time at which the arrest warrant was approved and when Detective Csapo left Police Troop 3 to conduct the arrest. (*See* D.I. 8 at 3–11). The Delaware Supreme Court denied the argument as meritless. Therefore, Petitioner is only entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

In this case, the Delaware Supreme Court denied Petitioner's instant argument explaining:

> The arrest warrant indicates that it was approved at 2:32 p.m. on March 11, 2015. During direct examination at the suppression hearing, Detective Csapo stated, "I believe the time [that I obtained the arrest warrant] was between maybe one and two in the afternoon," and that he made contact with Cephas *after* receiving the arrest warrant. During cross-examination, Detective Csapo stated that the arresting officers "arrived on scene at approximately 2:30 p.m.," and that the officers set up a perimeter around the house between their "arrival [at Cephas's address] at 2:30 and then my contact with Mr. Cephas at 3:15 inside the interview room at Troop 3." During cross-examination at trial, Detective Csapo testified that he was video sworn before a magistrate at Court 2 while Detective Csapo was at Troop 3, that he received verbal approval of the warrant before disconnecting from the video call and received the hard copy of the warrant at "approximately 2:30-ish," and that he had the hard copy before leaving for Cephas's residence.

*Cephas*, 2022 WL 1552149, at *3 (alteration in original and footnotes omitted).

Petitioner argues that the state courts made unreasonable findings of fact and that had his counsel filed a timely motion to suppress on that basis, the evidentiary hearing would have shown that "State Police entered his home, search for and arrested him without a validly issued warrant." (D.I. 8 at 3–4). Trial counsel explained in her affidavit that she discussed potential arguments— the same two arguments raised by Petitioner before this Court under Ground 1—for a motion to suppress with Petitioner and determined that these two "best arguments" were not meritorious. (*See* D.I. 16-14 at A887–88).[7] Indeed, Detective Csapo testified at the suppression hearing and trial that he obtained the warrant before he made any contact with Petitioner. (D.I. 16-29 at A102– 04, A110, A128; D.I. 16-33 at A409). The Delaware Supreme Court's refusal to find ineffective

---

[7]     Petitioner's trial counsel also explained to the court at a final case review that she had discussions with the prosecutor about Detective Csapo's obtainment of the warrant, and that when he went to the home, he already had the warrant in hand. (*See* D.I. 16-12 at A265). Further, at trial, Petitioner's trial counsel explicitly raised the timing issue of the warrant with the court. (*See* D.I. 16-33 at A379).

assistance presence for Petitioner's attorney failing to raise the issue of timing for the warrant (when, in fact, Petitioner's trial counsel did raise the issue, and in consideration of Detective Csapo's unrebutted trial testimony on the timing) was neither contrary to, nor an unreasonable application of, *Strickland*. Therefore, I recommend that Petitioner's first argument under Ground 1 be denied.

### 2. *Miranda*

In Ground 1 Petitioner also argues that his trial counsel was ineffective for failure to argue that Petitioner's invocation of counsel during police interrogation should have resulted in suppression. (D.I. 8 at 12–19). The Delaware Supreme Court denied the argument as meritless. Therefore, Petitioner is only entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established federal law governing a person's Fifth Amendment right to counsel during a custodial interrogation is set forth in *Miranda v. Arizona* and its progeny. In *Miranda*, the Supreme Court held, *inter alia*, that statements made by a defendant during a custodial interrogation must be suppressed unless he was informed of and waived his right to counsel or his right to remain silent. *See id.* at 477–79; *see Colorado v. Connelly*, 479 U.S. 157, 168 (1986). A suspect wishing to invoke his *Miranda* right to counsel or to remain silent must do so unambiguously. *See Davis v. United States*, 512 U.S. 452, 461-62 (1994) ("But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning."); *see also Berghuis v. Thompkins*, 560 U.S. 370 (2010) (extending *Davis* requirement of unambiguous invocation to *Miranda* right to remain silent).

A request to remain silent is unambiguous when the defendant states that he wants to remain silent or that he does not want to talk with the police. *See Berghuis*, 560 U.S. at 381. If the defendant "clearly invokes" his right to counsel, the police may not interrogate him unless counsel is made available or the defendant initiates the contact. *See Edwards v. Arizona*, 451 U.S. 477, 485-87 (1981). A defendant may waive his right to counsel but, in order for a waiver of *Miranda* rights to be valid: (1) "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A police statement can be involuntary even if it is made after the defendant was advised of, and waived, his *Miranda* rights. A court determines if a statement was voluntarily made by evaluating the "totality of the circumstances surrounding the interrogation" to ascertain if the defendant made an uncoerced choice and had the requisite level of comprehension. *See Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986). "[C]oercive police activity is a necessary predicate to the finding that a statement is not 'voluntary." *Connelly*, 479 U.S. at 167.

When determining voluntariness under the totality of the circumstances standard, a court must consider several factors in addition to "the crucial element of police coercion," such as "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health" and the failure of police to advise the defendant of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (discussing factors). If a defendant was advised of his *Miranda* rights and voluntarily waived them, it will be difficult to claim that his statement was nonetheless

involuntary. *See Missouri v. Seibert*, 542 U.S. 600, 609 (2004) (noting that "maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina"). Notably, even if the government uses psychological tactics to obtain a statement from a suspect, a statement is still considered voluntary as long as the suspect's decision to confess is a "product of the suspect's own balancing of competing considerations." *Miller*, 796 F.2d at 604.

A court must examine the record and make an independent determination as to whether the state court's legal determination of voluntariness was contrary to, or an unreasonable application of, Supreme Court precedent. *See id.* ("the ultimate question whether, under totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination."); *see also Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) ("[U]nder the AEDPA habeas standard, [a court is] required to determine whether the state court's legal determination of voluntariness was contrary to or an unreasonable application of Supreme Court precedent."). In contrast, state-court findings related to "subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings," are entitled to the presumption of factual correctness under § 2254. *Miller*, 474 U.S. at 117 (identifying the pre-1996 version of § 2254(d) as the applicable statutory section); *see also Sweet v. Tennis*, 386 F. App'x 342, 345 (3d Cir. 2010) (identifying § 2254(e)(1) as the appropriate statutory section). If the state court's "account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it." *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985) (describing clearly-erroneous review generally).

15

Here, the Delaware Supreme Court rejected Petitioner's *Miranda*-based arguments of ineffective assistance of counsel by stating as follows:

> [Petitioner] asserts that his trial counsel was ineffective because she did not timely seek to suppress [Petitioner]'s partial confession based on a claim that [Petitioner] ambiguously invoked his right to remain silent during his interrogation by Detective Csapo when he said "I can't even do this no more" and then stopped talking for several minutes. The Superior Court found that trial counsel evaluated Cephas's desire to seek suppression on this basis but did not believe that the claim was meritorious. The court agreed with trial counsel's analysis and concluded that, examining "the entire context of the conversation" and "'analyzing the totality of the circumstances,'" "[Petitioner] did not invoke *Miranda*" and therefore "[t]here was no need for a suppression motion" based on the ambiguous invocation issue.
>
> We conclude that [Petitioner] has not sufficiently demonstrated either that counsel's performance fell below an objective standard of reasonableness or prejudice as to this issue. After [Petitioner] said, "I can't even do this no more," Detective Csapo said: "You need to get help for what you're doing, for what you've done. You know that. You know that without a doubt. And, you can't argue with me when I say that, because you know. You need to get help. It's going to continue. This is the first step in that process." Before [Petitioner] spoke again, Detective Csapo also said, "You got to empty out your closet" and asked two questions about when Cephas last had contact with the child. Considering the totality of the circumstances, we find no basis for reversal. Even if [Petitioner]'s statement constituted an ambiguous invocation, Detective Csapo's response did not "coerce or intimidate" [Petitioner] or discourage him from obtaining counsel.

*Cephas*, 2022 WL 1552149, at *3 (footnotes omitted).

I agree with the Delaware Supreme Court's determination that Petitioner's ambiguous statement of "I can't even do this no more" did not rise to the level required to implicate an invocation of *Miranda*. It is well-settled that a petitioner has the burden of proving specific facts to support an allegation of ineffective assistance. *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996); *Wells*, 941 F.2d at 259–60. Turning to the inquiry under § 2254(d) in this case, although

the Delaware Supreme Court did not explicitly cite clearly established federal law when considering the issues of ambiguity, voluntariness, and waiver with respect to Petitioner's police statement, the Delaware Supreme Court did apply "the totality of the circumstances" standard when reviewing its merits. Therefore, the Delaware Supreme Court's decision is not contrary to clearly established federal law. *See Fahy v. Hom*, 516 F.3d 169, 196 (3d Cir. 2008) (finding that the Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because that decision "complie[d] with the Supreme Court's mandate to consider the totality of the circumstances."). Further, the Delaware Supreme Court applied *Strickland* to Petitioner's *Miranda* assertion regarding ineffective assistance.[8] "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690–91.

Having reviewed the record, the Court concludes that the Delaware Supreme Court's analysis and application of the *Strickland* factors was reasonable for both of Petitioner's arguments for Ground 1. The Delaware Supreme Court's decision to deny Ground 1 on the merits because there was no deficient representation nor any prejudice against Petitioner was a reasonable one, and in accordance with the *Strickland* standard. Moreover, both the Superior Court and Supreme Court appropriately examined Petitioner's claims of prejudice for Ground 1 and found that Petitioner failed to establish that it was "reasonably likely the result would have been different" but for counsel's performance. The Supreme Court did not unreasonably determine the facts or unreasonably apply *Strickland* in reaching this decision. Thus, I recommend that Ground 1 be denied for failing to satisfy § 2254(d).

---

[8]   The Delaware Supreme Court also held that even if the statement could be taken as an ambiguous invocation of *Miranda*, that there was no coercion or intimidation present in the interview. See *Cephas*, 2022 WL 1552149, at *3.

###### ii.    Ineffective Assistance: Ground 2

In Ground 2, Petitioner argues that trial counsel provided infective assistance because she failed to properly communicate the existence of a third plea offer and that, had he known about its existence, Petitioner would have accepted the plea. (D.I. 8 at 20–21, 25). The Delaware Supreme Court denied this argument as meritless during Petitioner's direct appeal. Therefore, Ground 2 will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

In *Lafler v. Cooper*, the Supreme Court held that a defendant was subjected to ineffective assistance of counsel when counsel caused nonacceptance of a plea offer, by advising against acceptance, and led to a less favorable outcome following trial. *Lafler v. Cooper*, 566 U.S. 156, 162, 170–71 (2012). The Third Circuit has also held that, the proper remedy when there is unreasonable action by counsel and a defendant was prejudiced under Strickland, the remedy is reoffering of the plea deal. *See Baker v. United States*, 109 F.4th 187, 196 (3d Cir. 2024).[9]

The remedy here, as elucidated in *Lafler*, is to reoffer the plea deal when the defendant was provided inadequate information regarding the potential of higher sentencing at trial or incorrect information about the plea itself. *Lafler*, 566 U.S. at 174; *see Baker*, F.4th 187 at 204. However, unlike in *Lafler* and *Baker*, there is no prejudice present against Petitioner here. While Petitioner contends that had he been told about the potential to plea to second-degree rape, he would have

---

[9]    "To establish prejudice, a defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'" *Baker*, F.4th 187 at 195 (quoting *Strickland*, 466 U.S. at 694). Further, they held that the Petitioner must show that "'but for [his] counsel's errors he would have accepted the plea.'" *Id.* (quoting *Lafler*, 566 U.S. at 171).

taken the plea deal, and that counsel never informed him of this, the trial Court held a colloquy that directly undermines Petitioner's argument.[10]

The Superior Court, determining there was potential that Petitioner's counsel had not communicated the plea deal, held a colloquy on September 6, 2016, to correct the possible issue. During the colloquy the court asked whether the Petitioner would have taken the plea deal offered and informed him of what the mandatory minimum penalty he faced should he proceed to trial and be convicted:

> THE COURT: Ok.  So, you are indicating your lawyer did not advice you of that plea offer?
>
> THE DEFENDANT: No.
>
> THE COURT: Is that something that you would be willing to entertain?
>
> THE DEFENDANT: No. . . .
>
> [THE COURT:] Today if you were offered a plea of 25 years recommended sentence, you would not take it?
>
> DEFENDANT: No.
>
> THE COURT: You would want to go to trial?
>
> DEFENDANT: Yes.
>
> THE COURT: And you would not want to go to trial based on your decision not to take that offer, and knowing that if convicted, you will be facing minimum mandatory time of 177 years if you are convicted of all offenses, and it would be by all intents and purposes life with no chance of parole or probation.

---

[10]    "The United States Supreme Court has held that when a counsel's deficiency induces a defendant to accept a guilty plea and waive his right to trial, the defendant has been prejudiced under *Strickland*." *Richardson v. State*, 3 A.3d 233, 241 (Del. 2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).  However, the Supreme Court has not held the inverse true. *See Mabry v. Johnson*, 467 U.S. 504, 507 (1984) (a "plea bargain standing alone is without constitutional significance.").

DFENDANT: Yes, sir. . . .

[THE COURT:] You had enough chance to consider whether or not you want to take that plea, and you don't want to take that plea?

DEFENDANT: No, sir.

(D.I. 16-30 at 5:6–23 – 6:22).

The Delaware Supreme Court took Petitioner's argument regarding the alleged failure to communicate the plea deal into consideration on the merits and explained:

> The record reflects that the State made a third plea offer in June 2016 under which Cephas would have pleaded guilty to either first- or second-degree rape, with a recommended minimum mandatory sentence of twenty-five years of incarceration. The parties dispute whether trial counsel communicated that offer to Cephas and, therefore, whether he rejected that offer in June 2016. Because there was no colloquy in June 2016, the Superior Court conducted a colloquy with Cephas on September 6, 2016. The court asked whether Cephas would accept a plea with a twenty-five-year recommended sentence, and Cephas unequivocally said that he would not. Whether or not trial counsel communicated the June 2016 plea offer to Cephas, he has not established prejudice because he stated at the September 2016 colloquy that he would not take a twenty-five-year plea.

*Cephas*, 2022 WL 1552149, at *4 (footnotes omitted).

Having review the record, the Court concludes that even if the plea deal Petitioner was ostensibly offered on June 29, 2016, was not communicated to him, the Superior Court rectified any possible prejudice by confirming that he would not have accepted the plea offer regardless. Applying both prongs of the *Strickland* standard, the Delaware Supreme Court reasonably found that there was no prejudice, even if failing to inform him of a plea deal was unreasonable. Accordingly, I recommend the Court deny relief under Ground 2.

### iii.    Ineffective Assistance: Ground 3

In Ground 3 Petitioner argues that counsel provided inadequate assistance for failing to object to the testimony of three individuals: (1) the pediatrician's assertions regarding the physical evidence and for being inflammatory; (2) the forensic nurse examiner's espousing of the credibility of the victim; and (3) Detective's Csapo for bolstering the victim and providing impermissible opinion which undermined Petitioner's credibility. (D.I. 8 at 33–37). The Delaware Supreme Court denied Ground 3 as meritless during Petitioner's direct appeal. Therefore, Ground 3 will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Delaware Supreme Court explained:

> [Petitioner] asserts that his counsel provided ineffective assistance because she did not object to certain testimony. Specifically, [Petitioner] argues that trial counsel should have (i) used the child's statement at the CAC interview that the alleged abuse had been occurring since January 2015 (approximately a one or two month period) to undermine the testimony of the child's pediatrician that the child told him that the alleged abuse had been occurring for a year; (ii) objected to a statement by the forensic nurse examiner that she obtained information regarding the allegations from the child's mother rather than the child because the child was "so young, and there was a high likelihood that she would get a CAC interview, which is a forensic interview where kids are spoken to by professionals whose only job it is to talk to kids and kind of find out the truth"; and (iii) objected to Detective Csapo's statement that "it's very uncommon" "for a suspect to come in and right away tell [him] the information he want[s]."

> None of these claims warrants postconviction relief. In her affidavit in response to the motion for postconviction relief, trial counsel explained the various factors that affected her decisions, in the exercise of her professional judgment, about how to respond to the challenged testimony. [Petitioner]'s claims do not overcome the strong presumption that counsel's performance was professionally reasonable and consistent with "sound trial strategy." As to the claim regarding the duration of the abuse, the facts that the child estimated that the abuse had occurred over a period of

21

approximately a year when speaking with the pediatrician and estimated that it had occurred only since January 2015 during her interview at the CAC were both presented to the jury. As to the forensic nurse examiner's statement, the nurse's statement did not opine on whether the child's statements at the CAC interview were the truth—indeed, the nurse clearly stated that the interview had not even occurred at the time that she examined the child. Finally, Detective Csapo's statement also did not opine on the truth of Cephas's statement, but rather referred to suspects' typical reluctance to make statements that the detective "wants" them to make. [Petitioner] has not established that counsel's performance was deficient as to these claims.

*Cephas*, 2022 WL 1552149, at *4 (footnotes omitted).

The record reveals that each of the three instances of a failure to object were decisions made by trial counsel as part of her trial strategy. The trial transcript of the pediatrician's testimony shows that although he attempted to get the victim to establish a time frame for the abuse, he needed to give her lengths of time to determine the length of time she was being abused. (*See* D.I. 16-32 at A272). Petitioner's assertion that the pediatrician's testimony regarding the "small fissure in her hymen membrane" was inflammatory was clarified by his testimony that he doesn't have much experience with abuse findings; further, Petitioner's counsel cross-examined the pediatrician to elicit agreement that the fissure can be found in children who do not have any history of sexual abuse. (*See id.* at A275–78). Moreover, the apparently conflicting testimony regarding the timeframe of abuse—one month versus one year—was presented to the jury. (*See Id.*; D.I. 16-33 at A325–34). As to the forensic nurse examiner, she did not opine on the veracity of the interview conducted by CAC; somewhat notably, she could not because it had not yet happened. (D.I. 16-33 at A301–02) ("there was a high likelihood that she would get a [CAC] interview . . . I wanted to preserve that story for [the victim's] official interview."). Finally, regarding Detective Csapo's potential vouching, the court interjected before Petitioner's counsel had a chance to object to the question. (*See* D.I. 16-33 at A392–93). Specifically, the court interjected because it found "some

22

of the questions [might] have been reasonably expected to have elicited potential vouching with regard to the truth or falsity of the defendant's statement, and [it] exercised [its] discretion in that regard to address that." (D.I. 16-33 at A147). Because of the court's interjection, no vouching was presented as part of Detective Csapo's testimony.

Given this record, I recommend that the Court deny Ground 5 because there is no objectively unreasonable application of *Strickland* present regarding the failure to object to the three aforementioned witness testimonies here.

###         iv.    **Ineffective Assistance: Ground 5**

In Ground 5 Petitioner argues that he was provided ineffective assistance because counsel failed to object to, or request a curative instruction for, several statements from the prosecutor during the opening statement and closing arguments. (D.I. 8 at 42). The Delaware Supreme Court found that the arguments set forth in Ground 5 were not raised in the postconviction proceedings in the Superior Court; accordingly, absent plain error, which the Supreme Court did not find, the Supreme Court did not consider Ground 5 because it was raised for the first time on appeal.[11] *Cephas*, 2022 WL 1552149, at *5.

Petitioner appears to assert that Ground 5 was not raised because his post-trial counsel prevented him from doing so. (*See* D.I. 8 at 44). The Supreme Court has adopted the "clear statement" rule of *Michigan v. Long*, to simplify situations in which "ambiguity of a state court decision may render it difficult for a reviewing federal court to determine whether the state court decision was based on an independent and adequate state ground, thereby precluding federal review." *Caswell v. Ryan*, 953 F.2d 853, 859 (3d Cir. 1992); *Michigan v. Long,* 463 U.S. 1032

---

[11]      *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (Plain error is error "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process").

(1983). Applying *Long* to the habeas context in *Harris v. Reed*, the Supreme Court held: "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." 463 U.S. 255, 263 (1989) (internal citations and quotation marks omitted).

In its decision, the Delaware Supreme Court clearly identified an independent and adequate state procedural rule for failure to raise the arguments in Ground 5 in postconviction proceedings in the Superior Court:

> Finally, [Petitioner] argues that his counsel was ineffective because she failed to object to, or request a curative instruction regarding, certain statements by the prosecutor. He asserts that trial counsel should have objected to (i) a statement by the prosecutor during closing argument that [Petitioner] admitted to penetrating the child's vagina; (ii) the prosecutor's suggestion during closing argument that the jury could infer guilt from [Petitioner]'s silence when the child's mother confronted him with the accusations shortly after the child reported the alleged abuse; and (iii) purported vouching by the prosecutor when she stated during closing argument that the victim's testimony supported an inference that she actually felt the alleged abuse. It does not appear that [Petitioner] raised these arguments in the postconviction proceedings in the Superior Court. Absent plain error, which we do not find here, we will not consider arguments raised for the first time on appeal. Del. Supr. Ct. R. 8. "This general rule is particularly appropriate in the context of ineffective-assistance-of-counsel claims because trial counsel was not afforded the opportunity to respond to the claims in the first instance." *Palmer v. State*, 2022 WL 871024, at *2 n.8 (Del. Mar. 23, 2022).

*Cephas*, 2022 WL 1552149.

By applying the procedural bar of Supreme Court Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris* that its decision rested exclusively on state procedural law grounds. Delaware Supreme Court Rule 8 is an independent and adequate state procedural rule precluding federal habeas review absent a showing of cause for the default, and prejudice

resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed. *See Campbell v. Burns*, 515 F.3d 172, 182 (3d Cir. 2008).

Citing to *Martinez v. Ryan*, Petitioner argues his failure to raise the arguments in Ground 5 at postconviction proceedings does not bar relief because his counsel was ineffective. 566 U.S. 1, 17 (2012). Thus, Petitioner argues, any alleged procedural failing is, in effect, excusable. Although there are instances under *Martinez* where a court may nevertheless consider a claim that is otherwise procedurally barred, this is not one of them. Before even holding a hearing on whether a petitioner can overcome a default of a *Martinez* claim, the federal habeas court must first decide whether the underlying defaulted habeas claim "succeeds considering only the state court record." *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713 (3d. Cir. 2022). If the court concludes that the underlying claim is not supported by the state record, it "should deny relief without more." *Id.* at 723–24.

Petitioner believes that trial counsel should have objected to and requested a curative instruction following comments made by the prosecutor in the opening statement and the closing argument. This claim fails because the underlying ineffectiveness claim lacks merit and is not substantial. Trial counsel did not perform deficiently in not objecting to certain statements or for failing to request a curative instruction. An attorney can reasonably decide not to seek a curative instruction because it "might have the undesired effect of highlighting" the disputed issue. *Buehl v. Vaughn*, 166 F.3d 163, 170 (3d Cir. 1999). Trial counsel was therefore reasonable for deciding not to highlight the allegedly objectionable statements. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. And when "the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the

25

petitioner or due to the unavailability of counsel), the presumption [of reasonableness] may only be rebutted through a showing that no sound strategy ... could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005).

This Court is limited to the facts developed in the state court record; a record which lacks appropriate facts to support Petitioner's argument that his trial counsel was ineffective. *See Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (when a prisoner's state post-conviction counsel was negligent for failing to raise an ineffective assistance of counsel claim that "has 'some merit,'" the court may hear that claim, even though the prisoner never raised it in state court) (quoting *Martinez*, 566 U.S. at 14); *but see Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 720 (3d. Cir. 2022) (even if *Martinez* applies, "'[t]here is an even higher bar for excusing a prisoner's failure to develop the state court record.'") (quoting *Shinn v. Ramirez*, 596 U.S. 366, 381 (2022)). "[The] AEDPA does not allow [a court] to excuse [Petitioner]'s failure to develop the record just because his state post-conviction [counsel] did a bad job." (citing *id.* at 387–88)).

In the absence of cause, the Court need not address the issue of prejudice. Additionally, Petitioner's default cannot be excused under the miscarriage of justice exception to the procedural default doctrine because he has failed to provide new reliable evidence that can establish his actual innocence. Accordingly, I recommend that the Court deny Ground 5 as procedurally barred from federal habeas review.

### v.   Ineffective Assistance: Ground 7

In Ground 7 Petitioner argues for ineffective assistance of post-conviction counsel due to the existence of a conflict of interest. Petitioner contends that the conflict of interest arose when counsel refused to file certain legal claims because she had an interest in running for Attorney

26

General in Delaware. (D.I. 8 at 66–67). Petitioner's initially appointed post-conviction counsel withdrew from representation and was replaced by new appointed counsel who similarly found no meritorious claims to raise on appeal. (*See generally* D.I. 16-1; D.I. 16-16). The first time this was raised is in Petitioner's third motion for postconviction relief. (*See* D.I. 16-21). However, aside from being procedurally barred, as this was Petitioner's third motion for post-conviction relief, there is also no cognizable claim under federal habeas relief for ineffective assistance of post-trial counsel.[12] Petitioner argues that the limited exceptions provided in *Martinez* should apply here. (D.I. 8 at 67). I disagree.[13] The limited exceptions proscribed in *Martinez* apply when post-conviction counsel failed to present substantial claims of ineffective assistance of trial counsel. Petitioner has not alleged the existence of any substantial claim omitted from his appeal that was not already raised as part of his previous meritoriously rejected claims. In the absence of cause, the Court need not address the issue of prejudice. Petitioner's default cannot be excused under the miscarriage of justice exception to the procedural default doctrine because he has failed to provide new reliable evidence that can establish his actual innocence. Accordingly, I recommend that the Court deny Ground 7 as procedurally barred from federal habeas review by § 2254.

---

[12]    *See* Del. Super. Ct. Crim. R. 61(d)(2) (providing that a second or subsequent motion for postconviction relief "shall be summarily dismissed, unless the movant was convicted after a trial and the motion" pleads with particularity either "that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or "a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction . . . invalid"); *see also id.* R. 61(i) (establishing procedural bars to postconviction relief and exceptions thereto).

[13]    *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

### B. Ground 4: Bias of the Court

In Ground 4, Petitioner contends that the trial court was biased because it "failed to conduct a proper inquiry into problems between Petitioner and his trial counsel; threatened Petitioner to forego self-representation; and refused to perform colloquy." (D.I. 8 at 38). The Delaware Supreme Court denied this argument as meritless during Petitioner's direct appeal. Therefore, Ground 4 will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

To the extent Petitioner raised issues of a threat from the court to "forego self[-]representation" and that the court "refused to perform [a] colloquy," these issues are procedurally barred because Petitioner failed to present them as an independent challenge during his direct appeal or Rule 61 appeal. Any attempt by Petitioner to assert the instant argument in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2). *See Parker v. DeMatteis*, 2021 WL 3709733, at \*6 (D. Del. Aug. 20, 2021). Although Rule 61 provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated here. Similarly, the exceptions set forth in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to these portions of Ground 4. Given these circumstances, the Court must treat the argument as exhausted but procedurally defaulted, thereby precluding habeas review absent a show of cause-and-prejudice or that a miscarriage of justice will occur without a merits review. *See Coleman*, 501 U.S. at 750–51.

Petitioner fails to assert any cause for his failure to present his instant argument regarding the Superior Court's alleged threat or lack of colloquy to the Delaware Supreme Court on direct or

post-conviction appeal. In the absence of cause, the Court need not address the issue of prejudice. *See McCandless*, 172 F.3d at 260. Additionally, the miscarriage of justice exception to the procedural default doctrine cannot be applied to excuse Petitioner's default because he has failed to provide any new reliable evidence of his actual innocence. *See Bousley*, 523 U.S. at 623; *Hubbard*, 378 F.3d at 339–40. In sum, the portions of Ground 4 pertaining to a threat or lack of colloquy are procedurally barred from habeas review.

In Ground 4 Petitioner argues that the trial court did not "consider the [Petitioner]'s request for removal and appointment of counsel." (D.I. 16-3 at 36). The Delaware Supreme Court considered this argument on the merits and upon reviewing the record explained:

> In his seventh and last claim on appeal, [Petitioner] contends that the Superior Court was biased against him because the Trial Judge did not appoint him new counsel despite knowing of "the obvious disconnect" between [Petitioner] and Defense Counsel. [Petitioner] offers no evidence to support his claim of judicial bias or impartiality, and the record reveals no such bias. The record reflects that the Trial Judge accommodated Cephas' requests to continue the trial so that [Petitioner] could hire private counsel to replace Defense Counsel. Then, when [Petitioner] was unable to hire counsel, the Trial Judge continued the trial a third time to give Defense Counsel time to prepare for trial. Also, during the suppression hearing, when Defense Counsel informed the Trial Judge that [Petitioner] had written her a note saying that he wanted to proceed pro se, the Trial Judge addressed [Petitioner's] concern and gave him the option to proceed through the required colloquy. [Petitioner] chose to stay with Defense Counsel.

*Cephas*, 2017 WL 3048466.

In *Faretta v. California*, the Supreme Court recognized that an individual's guarantee to assistance of counsel for his defense in a criminal trial "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." 422 U.S. 806, 819 (1975). However, the right to self-representation is not all encompassing. Should an individual express his desire to represent himself, "the accused must 'knowingly and

29

intelligently' forego those relinquished benefits" that are typically "associated with the right to counsel." *Id.* at 835. Applying this standard, the Third Circuit has held that when an individual wants to proceed pro se, the trial court must ensure the defendant understands "'the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved.'" *United States v. Davis*, No. 22-2807, 2023 WL 8519195, at *1 (3d Cir. Dec. 8, 2023) (quoting *United States v. Peppers*, 302 F.3d 120, 132 (3d Cir. 2002)).

The Supreme Court has found a judge to be constitutionally unfit to serve as a decisionmaker in only extreme situations.[14] Petitioner identifies no particularized instance of bias in the record; instead, he asserts a that he and counsel had difference of opinion about how to handle his defense. Rather than a desire to proceed *pro se*, it appears that Petitioner merely wanted different counsel than was provided to him—which desire the Delaware Supreme Court also reasonably determined was not supported by the record. *See Cephas*, 2017 WL 3048466, at *4. On November 16, 2015, Petitioner's counsel informed the court that Petitioner had expressed a desire to retain private counsel and requested a continuance for Petitioner to do so. (D.I. 16-12 at A46–48). Petitioner's counsel asserted the reason was because Petitioner wanted to pursue certain angles of the case that his current counsel did not view as meritorious, and he was concerned he would speak out of turn at trial should he proceed. (*Id.* at A47–48). Petitioner was placed under

---

[14] *See In re Murchison*, 349 U.S. 133, 136(1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of *actual* bias in the trial of cases." (emphasis added)). A judge should be disqualified for "bias, [ ] a likelihood of bias[,] or [even] an appearance of bias." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). *See also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("[M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause . . . establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar").

oath and affirmed that he was willing to waive his right to a speedy trial. (*Id.* at A49–50). After the continuance, Petitioner's counsel informed the trial judge that Petitioner had not retained private counsel, and she would be returning as his counsel on July 6, 2016. (*Id.* at A75–77). The judge awarded another continuance upon the joint request of both sides and to allow a key witness for Petitioner to testify. (*Id.* at A77–80). At the suppression hearing on August 4, 2016, Petitioner informed the court that he had several complaints about his attorney. The trial court judge informed Petitioner that it would be in his best interest to have an attorney and when he asked if Petitioner if he wanted to proceed *pro se* without an attorney Petitioner refused to do so:

> THE COURT: . . . You want to – sir, I understand you do want to be your own lawyer for the rest of this proceeding?
>
> THE DEFENDANT: I really don't, but I don't feel like I have a choice right now. The issues that I want to raise are not being raised.
>
> THE COURT: All right. Well, at this stage, you either do or you don't. If I go through a colloquy with you for about 45 minutes or an hour that it's going to take for you to go pro se, then you are going to be going *pro se*. This is a situation where you are on trial for some very serious, serious charges. There's all types of problems and difficulties going pro se, which make – not the least of which is the fact that you are going to have a jury trial that is going to be proceeding on the 22nd of August, and to do that on your own really is not – not a good recipe for putting forth your best case. You are risking and you are going to be compromising an awful lot by doing that. If we are going to go through this colloquy at this point, you are going without a lawyer. Is that what you want? I need to know that as a yes or a no.
>
> THE DEFENDANT: No.

(*Id.* at A165–68).

Contrary to Petitioner's Claim the trial court judge had no requirement to perform a more in-depth colloquy as proscribed in *Faretta*, because Petitioner—upon being informed about the ramifications of proceeding *pro se* and that he would not have standby counsel—declined to

proceed *pro se*. The trial court addressed his concerns in the colloquy and Petitioner does not have the right to choose his appointed counsel. *Morris v. Slappy*, 461 U.S. 1, 13–14 (1983) (while a defendant has the right to effective assistance of counsel, this right does not extend to the appointment of counsel of choice, confidence, or a meaningful relationship with appointed counsel). Thus, I recommend that Ground 4 be denied as the Delaware Supreme Court reasonably determined that there was no bias by the trial judge.

### C. Ground 6: Cumulative Error Effect

In Ground 6, Petitioner contends that the cumulative effect of errors deprived him of his due process right to a fair trial (D.I. 8 at 52). The Delaware Supreme Court denied this argument as procedurally barred.[15] Petitioner first raised this argument in his fourth petition for post-conviction relief and provides no explanation as to why it was not raised in an earlier petition. (*See* D.I. 16-25 at 1–2) ("[Petitioner']s trial counsel was ineffective for failing to preserve . . . the argument. Also[,] [Petitioner']s post[-]conviction counsel was ineffective."). This is not an argument; it is a conclusion that is unsupported by evidence or explanation. The Supreme Court also found it unpersuasive and summarily dismissed his fourth petition for post-conviction relief:

> After careful consideration of the appellant's opening brief, the State's motion to affirm, and the record on appeal, we conclude that the Superior Court's February 23, 2023[,] judgment summarily dismissing the appellant's fourth motion for postconviction relief should be affirmed. The appellant has not pleaded any circumstances under Rule 61(d)(2)(i) or (d)(2)(ii) that overcome the

---

[15]    *See* Del. Super. Ct. Crim. R. 61(d)(2) (subsequent motions for postconviction relief "shall be summarily dismissed, unless the movant was convicted after a trial and the motion" pleads *with particularity* either "that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or "a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction . . . invalid"); *see also id.* R. 61(i) (establishing procedural bars to postconviction relief and exceptions thereto).

procedural bars set forth in Rule 61, nor does he claim that the
Superior Court lacked jurisdiction.

*Cephas v. State*, 297 A.3d 1084 (Table), 2023 WL 3590422, at * 1 (Del. May 22, 2023) (footnotes

omitted).

By applying the procedural bar of Rule 61 (i), the Delaware Supreme Court articulated a

"plain statement" under *Harris*, that its decision rested exclusively on state procedural law

grounds. As Ground 6 is procedurally barred, and the Delaware Supreme Court explicitly provided

the necessary "plain statement" upon which it was barred, this Court need not address the merits

of the instant claim. In the absence of cause, the Court need not address the issue of prejudice.

Additionally, Petitioner's default cannot be excused under the miscarriage of justice exception to

the procedural default doctrine because he has failed to provide new reliable evidence that can

establish his actual innocence. Thus, I recommend that Ground 6 be denied.

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the Court must decide

whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of

appealability may be issued only when a petitioner makes a "substantial showing of the denial of

a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner

demonstrates "that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, if a

federal court denies a habeas petition on procedural grounds without reaching the underlying

constitutional claims, the court is not required to issue a certificate of appealability unless the

petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states

a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its

procedural ruling. *See Slack*, 529 U.S. at 484. The Court has concluded that the instant Petition

fails to warrant federal habeas relief and is persuaded that reasonable jurists would not find this conclusion to be debatable. Consequently, I recommend that the Court not issue a certificate of appealability.

## V.    CONCLUSION

For the foregoing reasons, I recommend that the instant Petition be denied without an evidentiary hearing.

Laura D. Hatcher
United States Magistrate Judge